1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11   RICHARD KNUDSEN,                    Nos.   C13-04476 CRB; C13-4465 CRB;
                                                C13-4542 CRB
12              Plaintiff,
                                         ORDER GRANTING MOTIONS TO
13      v.                               DISMISS WITH PREJUDICE

14   SPRINT COMMUNICATIONS CO., ET
     AL.,
15
                Defendants.
16   _____/

17
         Qui tam Relator Richard Knudsen ("Knudsen" or "Relator") alleges that the

18   Defendant telephone companies fraudulently overcharged the federal government in

19   providing cellular and data plan services, violating the False Claims Act ("FCA").  See

20   generally Cellco SAC (dkt. 74) in Case 13-4465; Sprint SAC (dkt. 76) in Case 13-4476;

21   AT&T SAC (dkt. 78) in Case 13-4542.[1]  Each set of Defendants[2] moves to dismiss the

22
     _____

23       [1] This Order will hereinafter stop listing case numbers, with the understanding that all Cellco (i.e.
     Verizon) filings are in Case No. 13-4465, all Sprint filings are in case No. 13-4476, and all AT&T
24   filings are in Case 13-4542.  Additionally, all references to transcripts of proceedings will be from
     the Cellco docket.
25
         [2] The Defendants in the Cellco case are Cellco Partnership, Verizon Wireless, Verizon
26   Communications, Inc., Verizon Business, Alltel Corporation, Verizon Federal Inc., Verizon Federal
     Incorporated, Verizon Services Corp., and Vodafone.  Cellco SAC ¶ 4.  However, Knudsen only
27   includes Cellco Partnership, Verizon Wireless, Verizon Communication, and Vodafone in the case
     caption.  See generally Cellco SAC.  The Defendants in the Sprint case are Sprint Communication
28   Company LP, Sprint Nextel, and Sprint Spectrum.  Sprint SAC ¶ 4.  Knudsen also lists in the same
     paragraph Sprint Solutions, Sprint Spectrum L.P., Sprint Spectrum Limited Partnership, Nextel
     Communication Incorporated, and Nextel Communications of the Mid Atlantic Incorporated, but these
     entities are not expressly labeled as defendants in the SAC, nor do they appear in the caption.  Id. ¶ 4.

**United States District Court**
For the Northern District of California

1   Second Amended Complaints ("SACs") for failing to state a claim, arguing that Knudsen

2   does not meet the Rule 8 and Rule 9(b) pleading standards.  See generally Cellco Mot. (dkt.

3   77); Sprint Mot. (dkt. 79); AT&T Mot. (dkt. 81).  The government has also filed a Statement

4   of Interest in this case.  See United States' Statement of Interest on Cellco Mot. to Dismiss

5   ("SOI Mot.") (dkt. 59).[3]  As explained below, the Court agrees with Defendants that the

6   SACs are inadequate.

7   **I.      BACKGROUND**

8           Knudsen "worked as an outside consultant in the technical support area of private and

9    public entity telecommunication rate plan optimization[] and contract compliance auditing

10  for ten years."  See Cellco SAC ¶ 16; Sprint SAC ¶ 15; AT&T SAC ¶ 18.  In that capacity,

11  he "developed intimate familiarity with the ways in which defendants entered into contracts

12  with the Federal Government for the government employees' use and the defendants'

13  management of cellular and data plan services."  See Cellco SAC ¶ 17; Sprint SAC ¶ 16;

14  AT&T SAC ¶ 19.  Knudsen allegedly gained "direct and independent knowledge of the

15  [alleged] false claim[s] through direct evaluation of the Defendants': (1) customer's [sic]

16  billing data, (2) customer's [sic] monthly usage, (3) price plan analysis (PPA) and (4)

17  quarterly account's [sic] rate plans review and recommendation(s) (stewardship reports)

18  provided by the carrier Defendants regarding their account billing, sales and account

19  management support."  See Cellco SAC ¶ 17; Sprint SAC ¶ 16; AT&T SAC ¶ 19.

20  _____

21  The Defendants in the AT&T case are American Telephone & Telegraph Company, AT&T Inc., AT&T
    Corporation, New Cingular Wireless Services, Inc., AT&T Technical Services Company, Inc., AT&T
22  Mobility, AT&T Wireless, AT&T Corporation (formerly Cingular, LLC).  AT&T SAC ¶ 4.  Knudsen
    does not expressly label AT&T Corp. as a defendant in the body of the SAC, but he includes it in the
23  case caption.  See generally id.  Knudsen also lists AT&T Wireless, Inc. (formerly Cingular, LLC),
    AT&T Services, Inc. (formerly SBC Services, Inc.), and Bellsouth Telecommunications Incorporated
24  in ¶ 4, but he does not expressly label them as defendants nor do they appear in the case caption.
    Furthermore, ¶ 4 and ¶ 5 both state "Defendant AT&T, Inc. (NYSE: T), Inc., is a Delaware corporation
25  with a principal place of business in New York, New York. This corporation is a holding company and
    the corporate parent of the following companies:" followed by a list of entities, some of which are
26  named "Defendants."  See id. ¶¶ 4-5.  The lists that follows for ¶ 5 is different, with different named
    defendants than for ¶ 4, including only AT&T Inc., AT&T Mobility, AT&T Wireless, AT&T
27  Corporation (formerly Cingular, LLC), and AT&T Services, Inc. (formerly SBC Services, Inc.). These
    also do not match the case caption.

28

            [3] The United States filed the same SOI for each set of Defendants.  See SOI Mot. at 2.

**United States District Court**
For the Northern District of California

Knudsen became aware of these alleged false claims while reviewing accounts held by a company called eOnTheGo.  See Cellco SAC ¶ 18; Sprint SAC ¶ 17; AT&T SAC  ¶ 20. Knudsen examined wireless agreements between Defendants and the City & County of San Francisco as well as the City of Los Angeles.  See Cellco SAC ¶ 19; Sprint SAC ¶ 18; AT&T SAC ¶ 21.  He discovered that "the billing data for all three carriers was not consistent with the contractual obligations of all three carriers."  Cellco SAC ¶ 19; Sprint SAC ¶ 18; AT&T SAC ¶ 21.  Afterward, Knudsen alleges that he became curious about the contracts these Defendants entered into with other government entities.  See Cellco SAC ¶ 20; Sprint SAC ¶ 19; AT&T SAC  ¶ 22.  Knudsen interviewed Ed DePaoli at the General Services Administration ("GSA") about the federal government's contracts with Defendants.  See Cellco SAC ¶ 21; Sprint SAC ¶ 20; AT&T SAC ¶ 22.  After Knudsen represented that he might be able to discover billions of dollars in false claims by auditing their contracts, the GSA permitted him to conduct a report based on three months of wireless billing data.  See Cellco SAC ¶¶ 21–22; Sprint SAC ¶¶ 20–21; AT&T SAC ¶¶ 23–24 ("Knudsen confirmed to [GSA], based on his own experience and analysis from previous projects, that there would be substantial savings for the GSA if the carriers' rate plans and standard practices were audited and that there would be significant audit recoveries going all the way back to 2003 by as much as $1 Billion, based on false claims being submitted to the government.").  Knudsen alleges that he assessed only Cellco's billing data, and that he then made "projections" as to Sprint and AT&T.  See Cellco SAC ¶¶ 23–24; Sprint SAC ¶¶ 22–23; AT&T SAC ¶¶ 25–26 ("Projections were made as to the other carriers . . . i.e., as to AT&T and Sprint, who were providing the same services under similar GSA Purchase Agreements.").

Based on those "projections," Knudsen alleges that Defendants violated the FCA in providing wireless services to 701+ federal agencies, costing the federal government an estimated $2.56 billion in "single damages."  See Cellco SAC ¶¶ 25–26; Sprint SAC ¶¶ 24–25; AT&T SAC ¶¶ 27–28.[4]  Knudsen attributes these damages to three different types

---

[4]  Relator alleges damages in the amount of $916.16 million by Sprint, see Sprint SAC ¶¶ 24–25, and $1.42 billion by AT&T, see AT&T SAC ¶¶ 27–28.

of wrongdoing: (1) Defendants failed to provide the government with the same plans and price reductions that they provided to the "BOA/MFC," the Basis of Award or Most Favored Customer, (2) Defendants added state and local taxes and surcharges to the rates already charged to the federal government, in violation of a General Services Administration Regulation ("GSAR") requiring that all taxes be included in the contract price, and (3) Defendants failed to monitor any over- or under-usage and to transfer those accounts to more appropriate rate plans, to disconnect lines unused for three consecutive months, and to apply activation credits.  See Cellco SAC ¶ 38; Sprint SAC ¶ 37; AT&T SAC ¶ 40.  Knudsen also alleges that Defendants "had to certify that their billing to the Federal Government was in accordance with the GSAR and 48 U.S.C. [§] 552.238-75 and the obligations thereunder so as to provide the Federal Government would receive [sic] the cost savings called for in these regulations."  See Cellco SAC ¶ 37; Sprint SAC ¶ 36; AT&T SAC ¶ 39.

Finally, Knudsen contends that, due to GSAR 52.203-13, Defendants were subject to ethical standards that "imposed [on them] an affirmative obligation . . . to take action to monitor and enforce their own contractual obligations for the benefit of the Federal Government so that the Federal Government would benefit from the application of the obligations which would have/should have resulted in significant reductions in the billings submitted to the Government."  See Cellco SAC ¶ 44; Sprint SAC ¶ 43; AT&T SAC ¶ 46. This "code of conduct" allegedly requires Defendants to "establish a compliance program" requiring them to identify any "improper conduct" and to disclose such conduct to the federal government.  See Cellco SAC ¶ 44; Sprint SAC ¶ 43; AT&T SAC ¶ 46.

Knudsen alleges that his claims are based on the terms of the contracts between Defendants and the federal government; he attaches as exhibits to each SAC excerpts of a contract between each set of Defendants and the federal government.  See Cellco SAC Ex. 3, 5, 6, 8, 10; Sprint SAC Ex. 3, 5, 6, 8, 10; AT&T SAC Ex. 3, 5, 6, 8, 10.  Knudsen alleges that these contractual violations were the basis of false claims that Defendants knowingly submitted to the federal government for payment. See Cellco SAC ¶¶ 47–52; Sprint SAC ¶¶ 46–51; AT&T SAC ¶¶ 49–54.

4

1    Knudsen originally brought these FCA suits in the Fall of 2013.  <u>See generally</u> Cellco

2  Compl. (dkt.1) (9/26/13); Sprint Compl. (dkt.1) (9/27/13); AT&T Compl. (dkt.1) (10/1/13).

3  This Court dismissed with leave to amend on June 5, 2015.  <u>See</u> June Hearing Tr. (dkt. 50).

4  The Court explained that Knudsen needed to remedy five problems with the complaints.  <u>Id.</u>

5  at 4–5.  Knudsen filed the FACs on July 6, 2015.  <u>See generally</u> Cellco FAC (dkt. 51); Sprint

6  FAC (dkt. 53); AT&T FAC (dkt. 54).  This Court found that Knudsen had addressed some of

7  the problems the Court had identified with the original complaints, but that the FACs were

8  still lacking—particularly in regards to the Rule 9(b) specificity requirements.  <u>See</u> FAC

9  Hearing (dkt. 64) Tr. at 7:1-4.  The Court asked Knudsen if he could amend the complaints to

10  include the Basis of Award ("BOA") customers, <u>id.</u> at 7:24-25, and the Cellco audit, <u>id.</u> at

11  16:24-25.  Knudsen stated that he had that information but that he was prohibited from

12  disclosing it due to confidentiality agreements.  <u>Id.</u> at 8:2–3, 17:3–4.  This Court gave him

13  the opportunity to file SACs under seal.  <u>See</u> Dec. 18 Order (dkt. 72).  Knudsen filed the

14  SACs on January 29, 2016; he did not file them under seal.  <u>See generally</u> Cellco SAC;

15  Sprint SAC; AT&T SAC.  Defendants now move to dismiss the SACs under Federal Rule of

16  Civil Procedure 12(b)(6).  <u>See generally</u> Cellco Mot.; Sprint Mot.; AT&T Mot.

17  **II.     LEGAL STANDARD**

18    Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be

19  granted where, "accept[ing] factual allegations in the complaint as true and constru[ing] the

20  pleadings in the light most favorable to the nonmoving party," the pleadings fail to state a

21  claim upon which relief can be granted.  <u>Manzarek v. St. Paul Fire & Marine Ins. Co.</u>, 519

22  F.3d 1025, 1031 (9th Cir. 2008); <u>see</u> Fed. R. Civ. P. 12(b)(6).  Rule 8(a) requires a complaint

23  to contain "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic</u>

24  <u>Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).[5]

25    A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or

26

27      [5]  Knudsen cites the <u>Conley</u> "no set of facts" standard.  <u>See</u> Cellco Opp'n (dkt. 79) at 11; Sprint
28  Opp'n (dkt. 80) at 11; AT&T Opp'n (dkt. 82) at 12; <u>see</u> <u>Conley v. Gibson</u>, 355 U.S. 41 (1957).  But the
Supreme Court explicitly rejected <u>Conley</u>'s "incomplete, negative gloss" on the pleading standard.  <u>See</u>
<u>Twombly</u>, 550 U.S. at 563–64.

United States District Court
For the Northern District of California

the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990). A "complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." <u>Twombly</u>, 550 U.S. at 562. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 555, 557). Rather, a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570).

An FCA claim must be not only plausible, but pled with particularity under Rule 9(b). <u>Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1054–55 (9th Cir. 2011). Such claims must identify "'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" <u>Id.</u> at 1055 (citation omitted). Rule 9(b) does not require an FCA claim to "identify representative examples of false claims to support every allegation." <u>Ebeid ex rel. United States v. Lungwitz</u>, 616 F.3d 993, 998 (9th Cir. 2010). "[I]t is sufficient to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" <u>Id.</u> at 998–99. Plaintiffs alleging these fraud claims must, in addition to pleading with particularity, also meet the Rule 8(a) plausibility standard. <u>See Cafasso</u>, 637 F.3d at 1055.

Thus, not only must Knudsen plead the "who, what, when, where, and how of the misconduct charged," he must also plead these particulars through factual allegations that make his claim plausible.

## III.   DISCUSSION

In dismissing the original complaints in June 2015, the Court directed Knudsen to cure five deficiencies in the pleadings by (A) including allegations beyond mere breaches of

contract; (B) grounding the alleged violations in the actual relationship between these Defendants and the federal government; (C) providing the "who, what, when, where, and how" specifics required by Rule 9 and both narrowing down and differentiating between Defendants; (D) adequately alleging scienter and materiality in light of the government knowledge doctrine; and (E) articulating the basis for his implied certification theory. See June Hearing Tr. at 4–5. In October 2015, the Court dismissed the FACs, finding that Knudsen cured some of those deficiencies, but not all. See FAC Hearing at 7:1–4. Defendants' motions to dismiss argue that the SACs still do not allege a false claim, contain no basis for a false certification theory, lack particularity, and do not adequately allege scienter or materiality. See generally Cellco Mot.; Sprint Mot.; AT&T Mot. Defendants are largely correct. Of the five items identified by the Court in June 2015, Knudsen only adequately addresses (A) alleging more than a mere breach of contract. Knudsen does not adequately (B) ground the alleged violations in the actual relationship between Defendants and the federal government, (C) provide the specifics required by Rule 9 and narrow down and differentiate between Defendants, and (D) allege scienter and materiality.[6] Accordingly, the Court GRANTS the Motions to Dismiss WITH PREJUDICE as to Knudsen, but WITHOUT PREJUDICE as to the United States.

### A. Allegations Beyond Mere Breaches of Contract

The Court directed Knudsen to "include allegations beyond mere breaches of contract." See June Hearing Tr. 4:11–12. In the original complaints, Knudsen based his allegations largely on speculation that Defendants breached their contract with the federal government. See e.g., Cellco Compl.; Sprint Compl.; AT&T Compl. Knudsen now alleges more clearly that Defendants submitted monthly billings to the federal government under their contract, and that those billings were fraudulent. See e.g., Cellco SAC ¶ 41; Sprint SAC ¶ 40; AT&T SAC ¶ 43 ("Defendants, did expressly certify the accuracy of those billings and affirm that the monthly billings comported with the contract terms and the applicable GSARs when they did not. Said certification and affirmation was done knowingly

---

[6] The Court will not reach (E) the implied certification theory.

United States District Court
For the Northern District of California

with the actual knowledge of and/or in deliberate ignorance of the truth or falsity of the information and/or a reckless disregard of the truth or falsity of the information . . ."). Knudsen attaches as an exhibit a blank copy of a certification form that "plaintiff is informed and believes and thereon alleges was required to be provided by Defendants in support of their monthly billings." See Cellco SAC ¶ 45, Ex. 9; Sprint SAC ¶ 40, Ex. 9; AT&T SAC ¶ 43, Ex. 9. Knudsen asserts both express and implied certification theories to support his allegations that his claim is more than a breach of contract. See Cellco SAC ¶¶ 41, 43; Sprint SAC ¶¶ 40, 42; AT&T SAC ¶¶ 43, 45.

Although Knudsen now bases his allegations more clearly on false claims, the SACs are still insufficient.

### B. Actual Relationship Between Defendants and Federal Government

In the original complaints, Knudsen relied primarily on the wireless agreements between Defendants and the City and County of San Francisco as well as the City of Los Angeles, applying his analysis of those agreements quite broadly to the federal government. See Cellco Compl.; Sprint Compl.; AT&T Compl. The Court directed Knudsen to ground any FCA violations in the actual relationship between Defendants and the federal government. See June Hearing Tr. 4:3–4. Knudsen now attaches to the SACs alleged excerpts from each Defendant's contract with the federal government, highlighting key provisions. See Cellco SAC Ex. 3, 5, 6, 8, 10; Sprint SAC Ex. 3, 5, 6, 8, 10; AT&T SAC Ex. 3, 5, 6, 8, 10. Three problems remain.

First, it is not clear which federal agencies the contracts are with. See Sprint FAC Mot. (dkt. 54) at 3–4. The SACs fail to identify any particular agency that used Defendants' services. See Cellco SAC ¶¶ 29-37; Sprint SAC ¶¶ 28-36; AT&T SAC ¶¶ 31-39. Knudsen alleges that these contracts involved Blanket Purchasing Agreements, allowing agencies to purchase services through the Multiple Award Schedules negotiated through the GSA. See Cellco SAC ¶¶ 27, 29; Sprint SAC ¶¶ 26, 28; AT&T SAC ¶¶ 29, 31. However, Knudsen's allegations only identify how federal agencies would purchase Defendants' services—it does not identify any actual relationship with any agencies. The SACs allege that there were

United States District Court
For the Northern District of California

"more than 700 contracting agencies . . . authorized to purchase those services . . . ."  See Cellco SAC ¶ 29; Sprint SAC ¶ 28; AT&T SAC ¶ 31 (emphasis added).  This allegation fails to allege specifics satisfying the Rule 9(b) pleading standard.

Second, it is not clear if the contracts incorporated the relevant terms on which Knudsen relies for the lengthy time span in which Defendants allegedly submitted false claims.  See Sprint FAC Mot. at 3–4.  Knudsen acknowledged in the FACs that he does not actually know the terms of Defendants' contracts with the government but speculates as to what they are.  See Cellco FAC ¶ 34; Sprint FAC ¶ 33; AT&T FAC ¶ 36 ("Plaintiff, based upon his review of the contracts and regulations identified above, paired with his specific knowledge of these same defendants, and their specific conduct as related to other governmental agencies, operating under similar contracts, with almost identical regulations . . .").[7]  Additionally, Knudsen can only estimate the overcharge by comparing the best available rates—indicating, as discussed at greater length below, that he does not know for any given time which customers comprise the BOA to which the government's rates are tied.  See Cellco SAC ¶ 56; Sprint SAC ¶ 55; AT&T SAC ¶ 58 ("Plaintiff is informed and believes. . . . estimates on the basis of available information . . . an amount in excess of $1.4 billion.").

Third, Knudsen relies on blank forms.  See Cellco FAC Mot. (dkt. 52) at 6.  Knudsen relies on a blank Commercial Sales Practices ("CSP") form to substantiate conclusory allegations that these terms were actually in the Defendants' and government's contract.  See Cellco SAC ¶ 28, Ex. 4; Sprint SAC ¶ 27, Ex. 4; AT&T SAC ¶ 30, Ex. 4.

Knudsen's attempt to ground his claims in the actual relationship between Defendants and the federal government is still insufficient.  These details about the contracted terms are the foundation of Knudsen's claims, and it appears that he cannot add further detail.

**C.  Narrowing and Differentiating Defendants, and Rule 9 Specifics**

Knudsen slightly narrowed down the list of Defendants' subsidiaries included in this suit, however, he still largely lumps the three Defendants together in his allegations.  And

---

[7]  The Court observes that using the word "specific" does not make an allegation specific.

1   importantly, the SACs still lack the plausibility and specificity required by Rules 8 and 9(b).

2            **1.  Narrowing and Differentiating Defendants**

3            Knudsen's initial complaints included as co-defendants a number of companies held

4   under each of the Defendant corporate parent companies.  See Cellco Compl. ¶ 6; Sprint

5   Compl. ¶ 9; AT&T Compl. ¶ 9.  In the FACs, Knudsen failed to significantly narrow down

6   the subsidiary companies.  See Cellco FAC ¶ 4; Sprint FAC ¶ 4; AT&T FAC ¶ 4; see also

7   Cellco FAC ¶ 8 ("Plaintiff alleges, on information and belief, that all of the above companies

8   were equally involved in the acts herein and plaintiff is unable to distinguish the acts of one,

9   from the acts of another.").  The FACs did not adequately address the Court's request to

10  narrow down the number of Defendants.  Knudsen made no changes to these paragraphs

11  between the FACs and SACs.  See Cellco SAC ¶ 4; Sprint SAC ¶ 4; AT&T SAC ¶¶ 4-5.

12  Furthermore, it remains unclear within the SACs who the actual defendants are for each set

13  of Defendants.  See supra note 2.

14           Knudsen also still fails to differentiate between Defendants.  His initial complaints

15  were nearly identical for all three Defendants.  See generally Cellco Compl.; Sprint Compl.;

16  AT&T Compl.  These SACs differentiate between Defendants in only three ways.  First,

17  Knudsen provides distinct excerpts of contracts.  See Cellco SAC Ex. 3, 5, 6, 8, 10; Sprint

18  SAC Ex. 3, 5, 6, 8, 10; AT&T SAC Ex. 3, 5, 6, 8, 10.  Second, although Knudsen allegedly

19  received three months' worth of raw data from the GSA, see Cellco SAC ¶¶ 20–21, it seems

20  that Knudsen limited his audit (which he did not include in his SACs) to overcharges

21  stemming from only the Cellco contract, see id. ¶¶ 21–22 ("Knudsen presented . . . a detailed,

22  line-by-line Detail (overcharges) and Recovery Report to the GSA regarding Verizon

23  Wireless's overcharges based on the information provided by the GSA.  Projections were

24  [then] made as to the other carriers during this meeting, i.e., as to AT&T and Sprint, who

25  were providing the same services under similar GSA Purchase Agreements.").  And third,

26  Knudsen alleges (without explanation) different total damages amounts.  See Cellco SAC

27

28

¶¶ 25-26, 56; Sprint SAC ¶¶ 24-25, 55; AT&T SAC ¶¶ 27-28, 58.[8]  Otherwise, the three

SACs are nearly identical.

Knudsen's assurances that "[t]he nature and extent of involvement of the various

Defendants will be determined over the course of discovery in this matter" is insufficient.

See AT&T SAC ¶ 12.  "Rule 9(b) does not allow a complaint to merely lump multiple

defendants together but requires plaintiffs to differentiate their allegations when suing more

than one defendant and inform each defendant separately of the allegations surrounding his

alleged participation in the fraud."  See United States ex rel. Lee v. Corinthian Colls., 655

F.3d 984, 997–98 (9th Cir. 2011) (quoting Swartz v. KPMG LLP, 476 F.3d 756, 764–65 (9th

Cir. 2007).

### 2.  Rule 9 Specifics and Rule 8 Plausibility

Knudsen acknowledges that he is required to provide facts sufficient to satisfy Rule

9(b), including the "who, what, when, where, and how" of a scheme to submit false claims.

See, e.g., Cellco Opp'n at 12.  However, he maintains that, according to the Ninth Circuit,

"allegations regarding contract terms and a defendant's breach of those terms 'generally

require[] only a plausible short and plain statement of the plaintiff's claim, not an exposition

of his legal argument' so as to 'give the defendant fair notice of the basis for [the plaintiff's]

claims.'"  See id. at 14 (citing Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 899–900 (9th

Cir. 2013)).[9]  Knudsen argues that he set forth

> specific terms and conditions disclosures, price lists, price reductions, discount
> increases, Contract modifications to keep current which Defendants were
> required to meet, many of which were mandated by federal law and the
> incorporation of federal regulations and standard clauses regarding such
> regulations as the basis of award comparisons between the commercial

---

[8]  Each SAC contains one paragraph estimating the average monthly costs for the federal government in 2012 under each contract.  See Cellco SAC ¶ 25; Sprint SAC ¶ 24; AT&T SAC  ¶ 27. But Knudsen does not connect these monthly cost estimates to the total damages he alleges.  See Cellco SAC ¶¶ 26, 56; Sprint SAC ¶¶ 25, 55; AT&T SAC ¶¶ 28, 58.  Nor does a calculation of monthly costs multiplied by the number of months in the alleged time period approximate the total damages Knudsen alleges. Aside from showing his estimates for only 2012, Knudsen does not allege the basis for his total damages calculations.

[9]  Knudsen's reliance on Rivera is misplaced because Rivera is a breach of contract case not governed by Rule 9(b).  See generally Rivera, 735 F.3d 892; Fed. R. Civ. P. 9.

11

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    standard practices applied to Defendants' identified customers or category of
2    customers and the contract at issue here, as well as the price reduction clause
     ("PRC") mandate and the bar to imposing additional taxes provisions included
3    in the Contract Clause Document for this agreement.

See Cellco Opp'n at 14.[10]

Knudsen's SACs still lack the necessary specificity as to all three sets of alleged

violations: (a) price reductions to the Basis of Award ("BOA") customers not extended to the

government; (b) charging taxes and surcharges allegedly required to be included in the

standard rates; and (c) other pricing and discount practices promised under contract

(including transfer to appropriate plan rates, disconnecting unused lines, applying new

activation credits).  See Cellco SAC ¶ 38; Sprint SAC ¶ 37; AT&T SAC ¶ 40.  Additionally,

while it is conceivable that Defendants participated in a fraudulent scheme, Knudsen failed to

allege the specifics of such a scheme with plausibility.  The Court will address each

allegation in turn.

### (a)  Price Reductions Provided to Basis of Award Customers

Knudsen does not allege with specificity that Defendants fraudulently provided

discounts to their BOAs but not to the federal government.

As addressed in Part III.C.1 of this Order, Knudsen failed to adequately narrow down

or differentiate between Defendants.  Knudsen further conceded his inability to "distinguish

the acts of one [defendant], from the acts of the other."  See Cellco SAC ¶ 8; Sprint SAC ¶ 7;

AT&T SAC ¶ 10.  Additionally, as addressed in Part III.B of this Order, Knudsen cannot

identify which government agencies purchased services under the government contracts with

Defendants.  Moreover, all of the SACs are nearly identical.  See generally Cellco SAC;

Sprint SAC; AT&T SAC.  Although Knudsen claims to be the "ultimate insider," see Cellco

Opp'n at 2, he still cannot allege with particularity the Defendant subsidiaries involved, the

governmental agencies using their services, or distinctions between the acts of the different

---

[10] At the motion hearing, Knudsen's counsel again asserted that his pleadings were adequate and
that the Court should not hold him to a summary judgment standard.  See SAC Hearing Tr. (dkt. 96) at
36:6–12 ("What we have pled, which is what I'm required to do, not prove . . .").  The Court is mindful
that this case is at—and has been unable to progress beyond—the motion to dismiss stage.

United States District Court
For the Northern District of California

1  sets of Defendants.  He thus fails to allege the "who" with specificity.[11]

2        As to the "what" and "how," Knudsen alleges that government contracts identify a

3  customer or category of customers as the BOA, basing the government's pricing on that

4  customer or customers' pricing.  See Cellco SAC ¶ 33; Sprint SAC ¶ 32; AT&T SAC ¶ 35

5  (citing 48 C.F.R. § 552.238-75[12]).  But Knudsen does not allege a specific customer or even a

6  specific category of customers comprising the BOA.  Instead he alleges a long "and/or" list

7  of public and private entities that the BOA "and/or MFC" "include[s]," which is exactly the

8  same for each set of Defendants.  See Cellco SAC ¶ 33; Sprint SAC ¶ 32; AT&T SAC ¶ 35

9  ("The BOA and/or MFC under the AT&T contract is/was not a single entity but . . . a

10  customer or class of customers. . . . AT&T's BOA consisted of a number of Fortune 500

11  companies and/or states or multi state alliances.  More specifically, the BOA/MFC included .

12  . . and/or . . .").  As Cellco noted in its motion to dismiss, the alleged potential BOA could be

13  any one of over 2,000 combinations of private and public customers.  See Cellco Mot. at 2.

14        Knudsen also cites to 48 C.F.R. § 538.270[13] in alleging that government contracts rely

15  on a category of customer that receives the best pricing.  See Cellco SAC ¶ 33; Sprint SAC

16  ¶ 32; AT&T SAC ¶ 35.  At the motion hearing, Knudsen asserted more clearly his theory of a

17  dynamic pricing scheme in which, at any given time, if any one of the customers included in

18  the "category of customers"—assuming that he had identified the complete universe of such

---

19            [11]  Knudsen argues in his Oppositions that he pled with specificity because his SACs identified

20  how the companies under each corporate parent came to be known as the named Defendants.  See Cellco
    Opp'n at 1 (citing Cellco SAC ¶¶ 4–5).  He further argues that because of the timing of these corporate

21  evolutions, he will be able to identify the specific acts of each subsidiary only after discovery.  See id.
    at 1–2.  This does not overcome his concession that he cannot distinguish between the individual acts

22  of the subsidiaries.  Knudsen should be able to allege how each of these named subsidiaries uniquely
    participated in the alleged fraudulent scheme.

23

24            [12]  This regulation provides in part: "Before award of a contract, the Contracting Officer and the
    Offeror will agree upon (1) the customer (or category of customers) which will be the basis of award,

25  and (2) the Government's price or discount relationship to the identified customer (or category of
    customers). . . . Any change in the Contractor's commercial pricing or discount arrangement applicable

26  to the identified customer (or category of customers) which disturbs this relationship shall constitute a
    price reduction."  48 C.F.R. § 552.238-75(a).

27            [13]  This regulation provides in part: "(a) The Government will seek to obtain the offeror's best

28  price (the best price given to the most favored customer).  However, the Government recognizes that
    the terms and conditions of commercial sales vary and there may be legitimate reasons why the best
    price is not achieved."  48 C.F.R. § 538.270(a).

United States District Court
For the Northern District of California

1    customers—received a price reduction, then the government should receive the same price

2    reduction.  SAC Hearing Tr. at 9:20–14:19 ("Every day it could change because it's the

3    lowest price offered at any moment in time directly to any of these folks."); see also AT&T

4    SAC ¶ 39 (alleging this theory in less clear terms).  Knudsen's allegation is that Defendants

5    violated the FCA when they "provided price reductions to the category of BOA/MFC" but

6    failed both to notify the government and to provide the same price reductions to the

7    government.  See, e.g., AT&T SAC ¶ 38(a).

8         However, the very regulation that Knudsen cites in support of his assertion that the

9    "government entities had the right to receive, and the Defendants had the obligation to

10   provide, the best rate [the defendants] provided to [their] BOA or MFC clients," see id. ¶ 35,

11   only states that the government "seeks" the best rate but that there may be "legitimate

12   reasons why the best price is not achieved," see 48 C.F.R. § 538.270(c).  Moreover,

13   Knudsen's own pleadings concede that "Basis of Award" and "Most Favored Customer" are

14   distinct terms.  See Cellco SAC ¶ 33; Sprint SAC ¶ 32; AT&T SAC ¶ 35.  Thus, Knudsen's

15   claims must allege with specificity either that the contracts were in fact tied to best pricing or

16   they must specifically allege which customer(s) served as the BOA for each set of

17   Defendants.[14]  Instead, these SACs assume that the BOAs must have been tied to best pricing

18   and that any "information" that another customer received better pricing necessarily means

19   that there were overcharges.  See generally Cellco SAC ¶¶ 29–37; Sprint SAC ¶¶ 28–36;

20   AT&T SAC ¶¶ 31–39.  This kind of surmise is insufficient to specifically allege that there

21   were price reductions to the BOA customers not extended to the government.

22        Furthermore, Knudsen did not allege with specificity a discount Defendants in fact

23   gave to a BOA customer that they did not award to the government.  See SAC Hearing Tr. at

24

_____

25        [14] At the motion hearing, the Court asked Knudsen to point to the contracts at issue in connection
with the BOA/MFC.  See SAC Hearing Tr. at 28:10–11.  Knudsen identified only Exhibits 3 and 4 to
26   the Cellco SAC, which are a "Contract Clause Document," which recites the language from 48 U.S.C.
§ 552.238-75 about what happens before the award of a contract, and a blank "Commercial Sales
27   Practices Format," which contains no specific information about the contracts at issue.  See id. at
30:9–10; Cellco SAC Ex. 3, 4.  Knudsen did not identify anything containing the actual terms of the
parties' contracts, or anything that would have prevented Verizon, for example, from negotiating a rate
28   with the government other than most favored pricing.  See SAC Hearing at 32:10–20; see also id. at 35
(Knudsen's counsel conceding that "[P]erhaps it can" be negotiated).

**United States District Court**
For the Northern District of California

18:19–19:1 ("What he's also failed to do, Your Honor, is failed to identify even one instance in which this supposed Basis of Award customer clause was — was triggered."); id. at 22:17–21 ("He admitted that plaintiff does not know on any particular date who the Basis of Award customer is; what rate was in effect for that customer; or if and when or how that rate was not given to the federal government.").  Although Knudsen is not required to present a representative example of a false claim, Ebeid, 616 F.3d at 998, he must still allege "particular details of a scheme to submit false claims . . ." see id. at 998–99.  The discounts and rates offered to the BOA are such particulars of a fraudulent scheme that Knudsen must plead under Rule 9(b).  Thus, Knudsen did not sufficiently plead "what" the government contracted for with each Defendant or "how" each Defendant in fact overcharged the government.

Knudsen's Opposition argues that he adequately alleged the "what" because he evaluated data about charges from Verizon from a cross-section of agencies (which he does not name) in order to assess whether the government received the lowest possible pricing. See Cellco Opp'n at 5 (citing Cellco SAC ¶ 23).  He also argues that his "and/or" list of the BOA is sufficiently particular.  See id. at 5.  He claims that he "knew at the time of his analysis and report to the GSA[] the terms of Defendant's contracts with these BOA customers including as they formed the BOA for the Cities of San Francisco and Los Angeles."  See id. at 5–6 (citing Cellco SAC ¶ 19).  Knudsen must provide more than an unadorned assertion that he knew the BOA customers "at the time" for the identical "and/or" list for each set of Defendants to be particular.  This is especially important as the BOA is the comparison point for determining pricing.

Additionally, Knudsen fails to plead with specificity "when" Defendants submitted these alleged false claims.  Knudsen alleges that Defendants "over the course of time since the inception of the contract . . . submitted false claims for payment, failed to provide the promised services required under the contract and violated the various statutes and regulations identified below . . . ."  See Cellco SAC ¶ 10; Sprint SAC ¶ 9; AT&T SAC ¶ 12. He also alleges a different "105-month period" in which Defendants submitted false claims

15

United States District Court
For the Northern District of California

every month.  See Cellco SAC ¶ 56; Sprint SAC ¶ 55; AT&T SAC ¶ 58.  To support his

assertion that the fraudulent scheme persisted for the duration of the contract, he cites an

audit that he performed on three months' worth of Cellco services from 2012—which he also

uses to support his allegations against Sprint and AT&T.  See Cellco SAC ¶¶ 23–24; Sprint

SAC ¶¶ 22–23; AT&T SAC ¶¶ 25–26.  Importantly, Knudsen created the 2012 audit twelve

years after the contract formed—which Knudsen alleges was "[o]n or about April 1, 2000"

for each set of defendants.  See Cellco SAC ¶ 29; Sprint SAC ¶ 28; AT&T SAC ¶ 31.  Based

on this small sample, Knudsen asserts that the violations took place over the life of the

contracts, or a 105-month period, for all sets of Defendants.[15]  In addition to lacking

specificity as to each set of Defendants, this audit has no factual significance as to the

conduct of the Sprint and AT&T defendants.  See Levitt v. Yelp! Inc., 765 F.3d 1123, 1135

(9th Cir. 2014) (the complaint "must allege factual content that allows the court to draw the

reasonable inference that the Defendant is liable for the misconduct alleged.") (internal

quotation and citation omitted).

Moreover, for much the same reason that Knudsen did not plead with specificity, he

also did not plead plausibly.  "When considering plausibility, courts must also consider an

'obvious alternative explanation' for [the] defendant's behavior."  Eclectic Props. E., LLC v.

Marcus & Millichap Co., 751 F.3d 990, 996 (9th Cir. 2014) (quoting Iqbal, 556 U.S. at 682).

As noted above, the regulations on which Knudsen relies only indicate that the government

"seeks" best pricing but that it is not always achieved because "terms and conditions of

commercial sales vary . . . ."  See 48 C.F.R. § 538.270(c).  Because the BOA is a designated

customer or category of customers and not necessarily the customer with the best pricing, an

"obvious alternative explanation" is that the BOA for each Defendant was not receiving best

pricing.[16]  Further making Knudsen's claim implausible is that he alleges the exact same

---

[15]   Alternatively, if this conclusory assertion that every monthly billing since the contract's inception satisfies the "when" of the Rule 9(b) specificity requirement, it is not plausible.

[16]   Even if Knudsen provided the Cellco audit, it would not have made his claim plausible. Because Knudsen did not allege with specificity or plausibility the actual BOA or the actual pricing terms, he cannot plausibly allege an overcharge.  Without a BOA and pricing terms, he has no point of

United States District Court
For the Northern District of California

"and/or" list of possible BOAs for all three sets of Defendants.  See Cellco SAC ¶ 33; Sprint SAC ¶ 32; AT&T SAC ¶ 35.  He also alleges the same contract start date with the same period of false claims submissions for all sets of Defendants.  See Cellco SAC ¶¶ 10, 56; Sprint SAC ¶¶ 9, 55; AT&T SAC ¶¶ 12, 58.  Because Knudsen alleges that Defendants submitted false claims for the entire duration of their contracts, all Defendants would have needed to award discounts to their BOA, but not the government, immediately after forming the government contracts to make those allegations plausible.  However, the factual allegation Knudsen uses to justify this, the Cellco audit for three months of 2012 data, does not make plausible such an expansive time span.  It is certainly conceivable that each Defendant's BOA customer or category of customers was within the "and/or" list Knudsen alleged, that each BOA did have a Defendant's best pricing, and that each Defendant gave pricing discounts to that BOA that it did not give to the government over the entire life of the contracts.  But Knudsen did not plausibly plead each of these occurrences.

In conclusion, the SACs lack "details of a scheme" in conjunction with "reliable indicia that lead to a strong inference" that Defendants submitted false claims to the government.  See Ebeid, 616 F. 3d at 999 (citation omitted).

### (b)      Violation of Tax Surcharges

Knudsen also alleges that Defendants fraudulently taxed the federal government.  See Cellco SAC ¶¶ 38(b), 40, 42, 48; Sprint SAC ¶¶ 37(b), 39, 41, 47; AT&T SAC ¶¶ 40(b), 42, 44, 50.  Knudsen alleges that Defendants "improperly, and deliberately, or with reckless disregard, added additional state and local taxes and surcharges to the rates charged to the Federal Government and submitted those claims for payment knowingly, as defined by 31 U.S.C. section 3729, [and] that they constituted a false claim."  See Cellco SAC ¶ 38(b); Sprint SAC ¶ 37(b); AT&T SAC ¶ 40(b).  All other paragraphs referencing these taxes and surcharges are conclusory, containing only bare assertions that Defendants wrongfully

---

comparison—other than best available pricing.  However, the obvious alternative explanation, that a BOA was not receiving the lowest rates, makes best pricing an inconclusive basis for comparison to allege an overcharge.  It is especially inconclusive in extrapolating potential overcharges spanning over a decade and for companies not included in the audit.

charged them.  See Cellco SAC ¶¶ 40, 42, 48; Sprint SAC ¶¶ 39, 41, 47; AT&T SAC ¶¶ 42, 44, 50.  Knudsen does not allege which surcharges or taxes Defendants charged or when. Knudsen only alleges that certain regulations require their inclusion in standard rates charged.  See Cellco SAC ¶ 38(b); Sprint SAC ¶ 37(b); AT&T SAC ¶ 40(b).  This does not satisfy either the Rule 8 plausibility or the Rule 9 specificity standards.  Furthermore, Knudsen did not even address this issue in his Oppositions.  See generally Cellco Opp'n; Sprint Opp'n; AT&T Opp'n.  Accordingly, the Court considers the claim waived.  See City of Arcadia v. EPA, 265 F. Supp. 2d 1142, 1154 n.16 (N.D. Cal. 2003) ("[t]he implication of this lack of response is that any opposition to the argument is waived."); see also Qureshi v. Countrywide Home Loans, Inc., No. 09–4198, 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar. 10, 2010) (deeming plaintiff's failure to address, in opposition brief, claims challenged in a motion to dismiss, an "abandonment of those claims") (citing Jenkins v. City of Riverside, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)).

### (c)    Violations of Pricing and Discount Practices

Knudsen's third set of allegations is that Defendants failed to "(1) transfer accounts that were over-utilized or under-utilized to more appropriate rate plans; (2) monitor and disconnect lines that had been unused for three consecutive months ('zero usage lines'); and (3) apply new activation credits."  See Cellco SAC ¶ 38(c); Sprint SAC ¶ 37(c); AT&T SAC ¶ 40(c).  These allegations suffer from the same problems as the previous two sets because they lack the "particular details" of the fraudulent scheme.  See Ebeid, 616 F. 3d at 998.

Generally, Knudsen's allegations that Defendants submitted false claims throughout the contractual period, see Cellco SAC ¶¶ 38–39; Sprint SAC ¶¶ 37–38; AT&T SAC ¶¶ 40–41, lack specifics regarding a contractual term actually included in any particular contract with the federal government, dates, or actual discounts that Defendants offered to the BOA but not to the government.  These allegations, made on "information and belief," see, e.g., Cellco SAC ¶ 26, are not sufficient for Rule 9(b) pleading because they are not "accompan[ied] [by] a statement of facts on which the belief is founded," see Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989) (stating that "[i]n order to

United States District Court
For the Northern District of California

1  plead fraud with particularity, the complaint must allege the time, place, and content of the

2  fraudulent representation; conclusory allegations do not suffice.").  Knudsen failed to allege

3  fraud with particularity because he failed to include facts showing that these contract terms

4  existed in a particular government contract as well as other "details of a scheme."

### D. Scienter & Materiality

6  Because the SACs did not adequately plead that the contracts between each Defendant

7  and the federal government incorporated terms ensuring best pricing, they also do not

8  adequately plead scienter.  Furthermore, Knudsen's materiality allegations remain conclusory

9  and inadequate.

#### 1. Scienter

11  FCA liability requires that a defendant "knowingly presents, or caused to be

12  presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses,

13  or causes to be made or used, a false record or statement material to a false or fraudulent

14  claim."  See 31 U.S.C. § 3729(a)(1).  Knudsen is correct that under Rule 9(b), "malice,

15  intent, knowledge, and other conditions of a persons [sic] mind, including scienter, can be

16  alleged generally."  See United States ex rel. Lee v. Corinthian Colls., 655 F.3d 984, 996 (9th

17  Cir. 2011) (internal quotations omitted).  However, "'innocent mistakes, mere negligent

18  misrepresentations and differences in interpretations' will not suffice to create liability."  Id.

19  (citing United States ex rel. Hendow v. University of Phoenix, 461 F.3d 1166, 1174 (9th Cir.

20  2006)) (internal quotations omitted).  Allegations of knowledge must still meet the Rule 8

21  standard requiring plausibility.

22  Under the FCA, "knowingly" does not require specific intent to defraud.  See 31

23  U.S.C. § 3729(b)(1)(B).  Instead, the FCA defines knowledge to include "actual knowledge,"

24  "deliberate ignorance of the truth or falsity of the information," or "reckless disregard of the

25  truth or falsity of the information."  31 U.S.C. § 3729(b)(1)(A).  "[A]n inference of scienter

26  must be more than merely plausible or reasonable—it must be cogent and at least as

27  compelling as any opposing inference or nonfraudulent intent."  Tellabs, Inc. v. Makor Issues

28  & Rights, Ltd., 551 U.S. 308, 314 (2007).

United States District Court
For the Northern District of California

Similar to Lee, Knudsen alleges that Defendants acted "knowingly" insofar as they allegedly knew that they violated their disclosure obligations, "thereby consciously and willfully perpetrating fraud on the Federal Government." See Cellco SAC ¶ 52; Sprint SAC ¶ 51; AT&T SAC ¶ 54. Also similar to Lee, Knudsen's SACs do not allege sufficient facts to support this claim.

Knudsen argues that scienter can be inferred from the existence of ethical obligations in the contracts between Defendants and the federal government. See, e.g., Cellco ¶¶ 47–52; Sprint SAC ¶¶ 46–51; AT&T SAC ¶¶ 49–54. He asserts that Defendants "did knowingly violate GSAR 552.212-715, GSAR 552.215.72, and 48 C.F.R. § 512.301, by denying the government the price reductions, discounts, concessions, and terms and conditions afforded to the designated category of customers (BOA/MFC) as required by law and contract." Cellco SAC ¶ 47; Sprint SAC ¶ 46; AT&T SAC ¶ 49. Knudsen also alleges that Defendants "knowingly" violated the GSARs by "impermissibly charging the government taxes and surcharges." See Cellco SAC ¶ 48; Sprint SAC ¶ 47; AT&T SAC ¶ 50. These are conclusory assertions insufficient to support his allegations of knowledge.

Knudsen has not adequately alleged scienter by pointing to Defendants' duty to establish compliance programs, which included a duty to periodically review practices, procedures, policies and internal controls. See Cellco SAC ¶ 49; Sprint SAC ¶ 48; AT&T SAC ¶ 51. Knudsen cannot reverse-engineer scienter in this way. To accept his argument would turn every bill sent by every entity that has business with the government, and that has a compliance program, into a false claim.

The closest Knudsen comes to adequately pleading scienter is his allegation that he is aware that Defendants provided discounts and optimization for other customers that Defendants chose not to provide to the government. See Cellco SAC ¶¶ 50–51; Sprint SAC ¶¶ 49–50; AT&T SAC ¶¶ 52–53. Knudsen alleges on "information and belief" that Defendants chose not to optimize rates for the government. See Cellco SAC ¶ 51; Sprint SAC ¶ 50; AT&T SAC ¶ 53. He surmises that there must have been scienter because Defendants could have used a "simple computer algorithm" to ensure that no pricing or

United States District Court
For the Northern District of California

1  optimization breaches occurred.  See Cellco SAC ¶ 49; Sprint SAC ¶ 48; AT&T SAC ¶ 51.

2  However, because Knudsen did not plead the specifics of the BOA and each Defendant's

3  pricing relationships to their BOA, the plausibility of his scienter allegations is also lacking.

4  "[T]he Government recognizes that the terms and conditions of commercial sales vary and

5  there may be legitimate reasons why the best price is not achieved."  See 48 C.F.R.

6  § 538.270(c).  Thus, there is an obvious alternative explanation as to why Knudsen might be

7  aware of lower prices for Defendants' non-government customers, weakening the chain of

8  inferences he uses to allege scienter.  This alternative explanation also undermines his

9  assertion that a "simple computer algorithm" would optimize the prices and rates each

10  Defendant provided to the government.

11         Because 48 CFR § 538.270(c) states that the government "seeks" the best prices

12  available, and because Knudsen does not sufficiently allege that best pricing was in fact a

13  term of each Defendant's contract with the federal government, Knudsen cannot plausibly

14  allege that Defendants failed to comply with the ethics programs in a manner amounting to

15  scienter under 31 U.S.C. § 3729(b)(1)(A).

16                       **2.   Materiality**

17         Knudsen also did not adequately plead materiality in the SACs.  Under the FCA, a

18  false statement "must be material to the government's decision to pay out moneys to the

19  claimant."  Hendow, 461 F.3d at 1172; see also 31 U.S.C.  § 3729(a)(1)(B).  In this context,

20  "material" means "having a natural tendency to influence, or be capable of influencing, the

21  payment or receipt of money or property."  See 31 U.S.C. § 3729(b)(4).  "[M]ateriality is

22  satisfied under [either express or implied certification theories] only where compliance is 'a

23  sine qua non of receipt of state funding.'"  Ebeid, 616 F.3d at 998; see also Maa v. Ostroff,

24  No. 12-cv-00200-JCS, 2013 WL 1703377,*18 (N.D. Cal. Apr. 19, 2013) (whether payment

25  is expressly conditioned on compliance "is evidence of what the government considers to be

26  material when making its decision to pay . . . .").  In assessing materiality, certification itself

27  is not essential; instead, "the question is merely whether the false certification—or assertion,

28  or statement—was relevant to the government's decision to confer a benefit."  Ebied, 616

1    F.3d at 997 (quoting <u>Hendow</u>, 461 F.3d at 1173).

2        Knudsen alleges simply that "[a]s reflected in the disclosures and representations

3    mandated by the Federal Government in the Commercial Sales Practice (CSP-1) from [sic]

4    Defendants were required to provide, and as mandated by GSAR [provisions], the price

5    reductions, discounts and terms and conditions afforded to the designated category of

6    customers were material to the agreement of the Federal Government to enter into the

7    contract with Defendants for the provisions of cellular services and data plans." <u>See</u> Cellco

8    SAC ¶ 46; Sprint SAC ¶ 45; AT&T SAC ¶ 48.  This conclusory statement is Knudsen's only

9    allegation regarding materiality.  It is insufficient.

10        The United States, in a Statement of Interest, argues that materiality is easily met

11    because a price reduction clause dictates how much the government pays, which has a natural

12    tendency to affect the government's decision to pay a claim.  <u>See</u> U.S. Recent Decision SOI

13    (dkt. 89) at 4.  Although the government might be correct that a PRC violation is material to

14    the government's decision to pay, the issue here is the adequacy of Knudsen's pleading.  The

15    Supreme Court recently concluded that materiality is not too fact intensive an issue upon

16    which courts may base an FCA dismissal.  <u>See</u> <u>Universal Health Services v. United States ex</u>

17    <u>rel. Escobar</u>, No. 15-7, 16-17 n.6 (Jun. 16, 2016).  The Court further stated that the standard

18    for pleading materiality is "rigorous" and that FCA plaintiffs must "plead their claims with

19    plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for

20    instance, pleading facts to support allegations of materiality." <u>See id.</u> (emphasis added).

21    Thus, the government is incorrect in its assertion that this is an "easy" standard—and

22    Knudsen does not meet it.  His single, conclusory paragraph seems to allege that because

23    there were regulations requiring the same price reductions given to BOA customers, those

24    terms were per se material to the government's decision to contract with Defendants.  <u>See</u>

25    Cellco SAC ¶ 46; Sprint SAC   ¶ 45; AT&T SAC ¶ 48.  The <u>Escobar</u> Court rejected a theory

26    of materiality that any statutory, regulatory, or contractual violation is material just because it

27    can result in the government's decision not to pay a claim.  <u>See</u> <u>Escobar</u>, No. 15-7 at 17.  The

28    Court gave examples as to how an FCA plaintiff might adequately plead a term's materiality,

United States District Court
For the Northern District of California

such as alleging that the government consistently refuses to pay claims that violate the allegedly material term. See id. at 16. Knudsen's SACs only point to the regulations. See Cellco SAC ¶ 46; Sprint SAC ¶ 45; AT&T SAC ¶ 48. This is not sufficient to meet the rigorous standard for pleading materiality. Knudsen's supplemental briefing regarding Escobar again points to the regulation's wording as evidence of the materiality of the terms. See Knudsen Suppl. Br. (dkt. 91) at 5.[17] Under Escobar, this is not sufficient to meet the "rigorous" standard necessary to adequately allege materiality plausibly and with particularity.

Lastly, Knudsen does not address the government knowledge doctrine in the SACs. See generally Cellco SAC; Sprint SAC; AT&T SAC; see also June Hearing Tr. 5:2–4 ("And in light of the government's knowledge, I think you have to adequately allege scienter and materiality, which, again, I don't think you've done."). The United States contends in its Statement of Interest that "Defendants [wrongly] assert that the government's knowledge of a defendant's conduct precludes FCA action." See SOI Mot. at 9. The government asserts that "it is well settled that government knowledge is not an absolute defense to FCA liability, but is only relevant insofar as it sheds light on the defendant's state of mind . . . At most, any government knowledge is relevant only to the question of whether defendant acted knowingly under the FCA." Id. What the government knew is "highly relevant" because it can show "that the defendant did not submit its claim in deliberate ignorance or reckless disregard for the truth." See United States ex rel. Hagood v. Sonoma County Water Agency, 929 F.2d 1416, 1421 (9th Cir. 1991). After Escobar, it appears that government knowledge of noncompliance also bears on whether such violations were actually material to the government's decision to pay a claim. See Escobar, No. 15-7 at 16. The government's payment of a claim in full despite knowledge of noncompliance with particular contractual

---

[17] Knudsen argues in the same Supplemental Briefings that the PRC was material because "[t]he Government paid its bills thinking that the mandated compliance programs would prevent the very fraud that Defendant's [sic] perpetrated." Knudsen Suppl. Br. at 5. This assertion that the government assumed compliance did not appear in the SACs. "In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." Schneider v. Cal. Dep't. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis in original).

23

United States District Court
For the Northern District of California

1   requirements "is very strong evidence that those requirements are not material." See id.

2   Knudsen's single, conclusory paragraph alleging materiality is insufficient on this ground as

3   well because it did not further allege that the government was unaware of the alleged PRC

4   violations.  Knudsen does not address materiality in his oppositions.  See generally Cellco

5   Opp'n; Sprint Opp'n; AT&T Opp'n.[18]

6       Without further details, such as allegations that the government consistently refuses to

7   pay claims that violate PRC terms or that the government did not know that it was not

8   receiving the required price reductions, Knudsen fails to adequately plead materiality.

9       **E.  Certification**

10      Knudsen did not plead with specificity that Defendants submitted false claims.  Even

11  if he had, he did not plausibly allege his express certification theory of liability.[19]

12      Knudsen "believes" that Defendants were required to and did submit a Certificate of

13  Current Cost or Pricing Data with each monthly billing.  See Cellco SAC ¶ 45; Sprint SAC

14  ¶ 40; AT&T SAC ¶ 43.  He asserts in conclusory fashion that "Defendants did expressly

15  certify the accuracy of those billings and affirm that the monthly billings comported with the

16  contract terms . . . when they did not."  See Cellco FAC ¶ 41; Sprint FAC ¶ 40; AT&T FAC

17  ¶ 43.  However the only support Knudsen includes for this assertion is a blank copy of a form

18  that he "believes" is required for all Defendants.  See Cellco SAC Ex. 9; Sprint SAC Ex. 9;

19  AT&T SAC Ex. 9.  Knudsen does not adequately allege that these certifications were in fact

20  required, or that Defendants submitted them, and nothing about the form raises Knudsen's

21

22

23

24      [18]  Knudsen did address this argument in his supplemental briefing on Escobar and insinuated
    that the government did not have knowledge of Defendants' non-compliance.  See Knudsen Suppl. Br.
25  at 5.  However, as addressed above, the Court may not look at facts beyond the complaint to determine
    the propriety of a Rule 12(b)(6) dismissal.  Schneider v. Cal. Dep't. of Corr., 151 F.3d 1194, 1197 n.1
26  (9th Cir. 1998)

27      [19]  The parties and United States all agree that the Court does not need to reach the implied
    certification theory of liability in order to decide these motions to dismiss, and the Court will not do so.
28  See Cellco Suppl. Br. at 1-2; Sprint Suppl. Br. at 3; AT&T Suppl. Br. at 2; Knudsen Suppl. Br. at 1; U.S.
    Recent Decision SOI at 3-4.

1    belief beyond mere speculation.[20]

2        **F. Discovery**

3        Knudsen asserts that he needs discovery to reveal some of the very specifics Rule 9(b)

4    and this Court require of him.  See Cellco SAC ¶ 10; Sprint SAC ¶ 9; AT&T SAC ¶ 12 ("The

5    nature and extent of involvement of the various Defendants will be determined over the

6    course of discovery in this matter."); see also Cellco Opp'n at 11 ("[I]t is evident that a set of

7    facts exists that entitle the plaintiff to proceed and develop, through discovery, the FCA

8    claim which will entitle . . . the Relator . . . to significant relief . . . .").[21]

9        "Rule 9(b) serves not only to give notice to defendants of the specific fraudulent

10   conduct against which they must defend, but also to deter the filing of complaints as a pretext

11   of the discovery of unknown wrongs, to protect defendants from the harm that comes from

12   being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the

13   court, the parties and society enormous social and economic costs absent some factual basis."

14   Cafasso, 637 F.3d at 1057 (internal quotations omitted).  Discovery is inappropriate here

15   because Knudsen cannot allege sufficient factual detail about the BOA customers, about

16   Defendants impermissibly applying taxes and surcharges, or about any rate reductions

17   Defendants wrongfully did not offer to the government.  See id. ("In light of Cafasso's

18   failure to identify any particular false claims or their attendant circumstances, as well as the

19   'obvious alternative explanation' that no false claims occurred, we will not draw the

20   unwarranted and implausible inference that discovery will reveal evidence of such false

21

22       [20] The blank form in Exhibit 9, "Certificate of Current Cost of Pricing Data," is exactly the same
23   across the sets of defendants.  See Cellco SAC ¶ 45; Sprint SAC ¶ 40; AT&T SAC ¶ 43.  It states in
     part: "This is to certify that, to the best of my knowledge and belief, the cost or pricing data . . .
24   submitted, either actually or by specific identification in writing, to the Company in support of ___* are
     accurate, complete, and current as of ___ **.  This certification includes the cost or pricing data
25   supporting any advance agreements and forward pricing rate agreements between the offeror and the
     Government that are part of the proposal."  Id.  Knudsen has not explained this form in any detail,
26   including why if it is an example of the kind of certification the Defendants would have made to the
     government, it is phrased such that "the cost or pricing data" is submitted "to the Company"—here,
27   presumably, Defendants, rather than to the government.

28       [21] The Court has already noted that Knudsen makes completely unsupported allegations—like
     Defendants failing to provide rate optimization—on "information and belief."  See Cellco SAC ¶ 51;
     Sprint SAC ¶ 50; AT&T SAC ¶ 53.

United States District Court
For the Northern District of California

1    claims.").

2        Although it might be true that any evidence of fraud is in Defendants' exclusive

3    possession, this does not justify discovery for an otherwise deficient pleading under Rule

4    9(b). In cases involving securities fraud there is a limited exception which allows a court to

5    relax the 9(b) pleading standard to permit discovery, but the Ninth Circuit expressly declined

6    to extend this exception to FCA pleading. See Ebeid, 616 F.3d at 999. The court explained

7    that the "FCA is geared primarily to encourage insiders to disclose information," not to

8    "facilitate a claim by an outsider." Id. at 999. Knudsen's assertion that he is the "ultimate

9    insider," see Cellco Opp'n at 2, is not self-legitimizing.[22] Thus, Knudsen's assertion that the

10   Court should relax the 9(b) pleading standard when the evidence is in the sole possession of a

11   defendant is incorrect in this context.

12       Because Knudsen has not met the pleading standards for Rules 8 and 9(b), see Part

13   III.C, discovery is an inappropriate avenue to cure the deficient pleadings.

14   **G.  Leave to Amend**

15       Knudsen urges that "leave to amend should be granted unless this Court determines

16   that the pleading 'could not possibly be cured by allegations of other facts.'" See Sprint

17   Opp'n at 23 (citing Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)). However, this

18   Court has "particularly broad" discretion to deny amendment because it has previously given

19   leave to amend. See Miller v. Yokohama Tire Corp., 358 F.3d 616, 622 (9th Cir. 2004)

20   (citation omitted). Furthermore, "[f]utility of amendment can . . . justify the denial of a

21   motion for leave to amend." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). This

22

23       [22]  Knudsen's Opposition spends a great deal of time trying to convince the Court of his insider
     status.  See Cellco Opp'n at 2-4.  The SACs do make a number of allegations as to the inside
24   information Knudsen has from his work as an outside consultant for telecommunication rate plan
     optimization. See, e.g., Cellco SAC ¶ 16; Sprint SAC ¶ 15; AT&T SAC ¶ 18. In this role, he performed
25   audits for all sets of Defendant companies regarding price plans and billings.  See Cellco SAC ¶ 17;
     Sprint SAC ¶ 16; AT&T SAC ¶ 19.  These Defendants hired him to review contracts for clients and
26   prospective clients and evaluate their current billing and usage.  See Cellco SAC ¶ 19; Sprint SAC ¶ 18;
     AT&T SAC ¶ 21.  In his work for Defendants, Knudsen examined rates, prices, discounts, and
27   concessions.  See Cellco SAC ¶ 18; Sprint SAC ¶ 17; AT&T SAC ¶ 20.  Although Knudsen does have
     some inside information, he does not have the insider information, or true insider status, to adequately
28   allege FCA violations.  Despite his claim of being an insider, he cannot allege the most important
     particulars to support his claim—the actual BOA for each Defendant and the price term serving as the
     comparison point.

**United States District Court**
For the Northern District of California

Court already granted Knudsen two opportunities to amend his complaints.  In arguing for leave to amend his FACs, Knudsen promised this Court that he could provide more specifics to satisfy the Rule 9 requirement.  See FAC Hearing Tr. at 7:5-10.  Knudsen further represented that he could adequately amend but that he was bound by confidentiality agreements preventing public disclosure of the necessary information.  See id. at 8:2-4.  Knudsen also represented that, but for these confidentiality agreements, he could provide the Cellco audit that he allegedly performed, see id. at 16-17, as well as the identity of the category of customers comprising the BOA.  See id. at 7–8.  This Court allowed Knudsen to file under seal.  See Sprint Status Conference Tr. at 5:3–6.  Knudsen did not file any documents under seal.  Knudsen did not provide the Cellco audit.  And Knudsen did not allege a particular category of customers comprising each Defendant's BOA, but a long "and/or" list of companies or entities that was identical for each set of Defendants.  See Cellco SAC ¶ 33; Sprint SAC ¶ 32; AT&T SAC ¶ 35.  Knudsen's inability to produce the Cellco audit or to adequately allege a BOA for any Defendant indicates that he does not have this information.  These failures, combined with Knudsen's repeated failure to allege FCA violations with specificity in accordance with the Court's explicit instructions, demonstrate that he cannot meet the pleading standard.  This Court therefore DENIES leave to amend as it seems that amendment would be futile.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS the Motions to Dismiss WITH PREJUDICE to Knudsen but WITHOUT PREJUDICE to the United States.

**IT IS SO ORDERED.**

Dated: September 1, 2016

_____
CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE